We move to the second case this morning, United States v. Jackson and United States v. Jenkins. Michael Kimberly Thank you, your honors. It's Michael Kimberly for appellant Antoine Jenkins. Your honors, I'd like to focus my presentation this morning on two principal themes. The first is that this court's decision in Cardina, holding that section 924C3B is unconstitutionally vague, remains good law and has not been called into question by the Supreme Court's decision in DiMaia. The second point is that even if it were open to this panel to reconsider Cardina, excuse me, and the constitutionality of 924C3B, it nevertheless would be compelled by the Supreme Court's decisions in Leocal and DiMaia to hold that the categorical approach applies. It would have to reach that same conclusion indeed just under the statutory text, its structure, and the context of the statute. I'll start first with Cardina, excuse me, Cardina. Cardina was a very, I think, although it was a lengthy opinion with many holdings, as it respected 924E, excuse me, C3B, it was a rather straightforward opinion. It held that the text of 924C3B was, quote, substantively indistinguishable from the text of 924E2B2, which was the text found unconstitutionally vague in Johnson. And it held that it was, quote, unquote, the same, which of course it is, as the text of section 16B, which was found unconstitutional in the Vivas case. The rationale was because the categorical approach applied to that indistinguishable text and the same text, it had to apply to 924C3B as well. And we think that's a very sensible and straightforward opinion that stands on good logic. Nothing that the Supreme Court can do. Now, excuse me. I'm sorry. The rationale behind the categorical approach has always hinged, at least in part, on the difficulties specific to the consideration of a prior conviction, has it not? As a matter of fact, Your Honor, it has not. The Supreme Court's decision in Leocal, I think, is very clear that it rests on the language offense and by its nature. Leocal speaks not one word about the broader practical difficulties of proving the circumstances of prior convictions. I might add that section — What policy rationale would there be? What other policy rationale would there be for supporting the categorical approach? Well, I think the clearest policy rationale is that courts have to give meaning to the plain text that Congress uses. I think as long as we can conclude that the plain text resolves the case, there's no need to think of any broader policy considerations beyond those that undergirded Congress's decision to use the language that it used. You know, I might — I'm sorry. Yeah. No, go ahead. Well, I might add that the purported distinction between section 16B and 924C3B, that 16B applies to prior convictions, whereas 924C3B does not, is not, in fact, a distinction that holds up. As a matter of fact, section 16B is — section 16, A being the force clause, B being the residual clause, is simply a definitional provision. It is not, in fact, a substantive provision of the criminal code that outlaws any particular conduct. It is incorporated throughout the criminal code in over 30 different provisions. A number of those provisions apply to the conduct charged, not to prior convictions. Examples include section 18 U.S.C. 25, which incorporates section 16 in its prohibition of the use of minors in crimes of violence. Section 18 U.S.C. 119, which incorporates the definition at section 16 in the prohibition on using private personal information to threaten or facilitate a crime of violence. 18 U.S.C. 1956, which prohibits money laundering in the course of a crime of violence. In all of these — and there are other examples — in all of these statutes, section 16 is — the definition of a crime of violence in section 16 is incorporated by reference and is applied in a context where it is — the definition of crime of violence is being applied to the conduct of conviction, not a prior conviction. Sotomayor, you're going to have to help me here. You refer repeatedly in your brief to criminal defendants, quote, being prosecuted under 16b. But no defendants are prosecuted under 16b. It applies only to prior convictions. That is the rationale for the differing approaches advanced by the government, is it not? Your Honor, I think that's an accurate description of the government's argument, but it is not, in fact, accurate. And you're right. Our use of language in our brief was perhaps inaccurate itself. You are correct that nobody is, as I was just explaining, that nobody is prosecuted under 16b itself. They are prosecuted under other sections of the criminal code that incorporate section 16's definition of a crime of violence. But as I was just describing, numerous of those other code provisions that incorporate section 16b do not apply to prior convictions. They incorporate section — Are there cases that, without reference to the ACA or 16b or some other recidivist statute, that have reasoned that a categorical approach is necessary to 924cb3, or do all of the cases applying the categorical approach to 924c simply extend the rationale used in recidivist statutes with similar language? I think, so far as we're aware, 924c3b has been interpreted by other courts to require the categorical approach on the basis that the Supreme Court, in Leocal and now more recently in DeMaia, affirming Leocal, interpreting identical language has held that the language of 16b requires the categorical approach. I think it would surpass strange to suggest that Congress enacted section 16b — That may not be unusual in this case, these cases. Go ahead. Well, I — I mean, surpassing is strange. The very strangest entire problem we have with these cases, right? Meaning the categorical approach. Well, I mean, in just the whole sense of the sentencing guidelines in this problem we're facing in both these cases, which — Your Honor, we don't deny that the categorical approach is applied in these cases. It can at times be, I think, difficult. That's indeed why they're being invalidated by the Supreme Court. It's unconstitutionally vague. But I would point the Court to Judge William Pryor's concurrence in Ovalis, where he makes clear, I think quite rightly, that the answer here, to the extent the Court is concerned about those difficulties, is one that Congress must give, not these courts. It would be an easy enough matter for the Congress to amend 924c3b to require an analysis of the underlying conduct, as it does in numerous other statutes all the time. That it didn't include the same sort of language that we expect to see in underlying conduct statutes in 924c3b. That it instead used the identical language of 16b, which had been enacted just 19 months earlier, is, we would say, not only a strong indication that the categorical approach is required, but that it's implausible to suggest that the categorical approach — — treat the text of 16b and 924c differently, you know, because of their essentially identical wording. Is it problematic to focus on the wording to the exclusion of the differing contexts in which the two statutes arise? There are two things to say about that, Your Honor. The first is just to come back to what I was saying earlier, and I'm sorry if I'm repeating myself. The context in which the two statutes arise is not, in fact, different. As I've said, 16b applies in circumstances where the question is not predicate convictions or prior convictions, but the underlying conduct itself. I think that the second point is there would have to be a textual indication that Congress intended 924c3b to be interpreted in a fundamentally different way from 16b, given that the two are identical. The notion that Congress acting 19 months later would have used the identical language to mean something entirely different, we don't think is a plausible position to take. You know, I might add that it's an inevitable consequence of placing emphasis on the fact that 924e3b applies to the conduct of conviction rather than prior convictions, that Section 16c itself would have to be interpreted in different ways in different cases. And, indeed, that's exactly what the Eleventh Circuit sitting on Bank and Ovalis said. It said that it was comfortable interpreting 16b to require the categorical approach only in those cases where it's incorporated by reference into a statute that is concerned with predicate offenses. But when it's incorporated into statutes concerning the underlying conduct, it believed, by dint of the same reasoning that it gave with respect to 924c3b, that it would have to apply, that it would implicate the underlying conduct approach. That is exactly, exactly the argument and conclusion that the Supreme Court rejected in Clark v. Martinez. And if this panel focuses on any case today, I would urge it to focus on Clark v. Martinez, which explained that the constitutional avoidance canon cannot be invoked as a basis for applying the same statutory text differently in different cases based on the perceived presence of constitutional problems in one case, but not in another case. It emphasized that a statutory text, once construed, must apply equally to everyone to whom it applies. Now, it's true there is a difference between this case and the circumstances in Clark v. Martinez because that case involved a single statute that was being applied to different categories of foreign nationals, whereas here we have statutory text appearing in 16b and identical statutory text appearing in 924c3b. But as I say, there would have to be some textual indication that Congress actually meant something different in 924c3b than it meant in 16b. And in fact, there is no indication whatsoever, apart from what the government says, is the fact that 924c3b applies to conduct of conviction. But to hold that that is a basis for reading an ambiguity into 924c3b where none exists in 16b, where the categorical approach appears in 16b, is to say that the constitutional avoidance canon both provides the ambiguity, the basis for interpreting the statute differently, as well as the resolution of that ambiguity. And that, too, is exactly the argument in theory that the Supreme Court considered and rejected in Clark v. Martinez. Would you reiterate your position with regard to Cardena and what we should do with that? Certainly. So Cardena itself relied on, among other cases, the Vivas case, which held that Section 16b requires the categorical approach and is therefore constitutionally vague. All DiMaia did was confirm that Vivas was correctly decided. It therefore provides, in our view, further support for the conclusion that Cardena itself was correctly decided. Nothing about the holding in DiMaia casts any doubt on the unconstitutionality, on this Court's conclusion that 924c3b is unconstitutionally vague. Your Honors, if I may, I'd like to reserve my time. Thank you, Counsel. Mr. Shapiro? Good morning, Your Honors. David Shapiro for Douglas Jackson. I join Mr. Kimberly's arguments as to the merits of this case. But as to Mr. Jackson's case, the Court should not reach the merits because the waiver by the government, based on its affirmative argument in support of the categorical approach, is so clear. The government submitted a set of jury instructions to the District Court, flatly inconsistent with the underlying conduct approach and consistent only with the categorical approach. The District Court gave those jury instructions. On appeal to this Court, the government argued affirmatively in support of the categorical approach and against the underlying conduct approach on page 15 of its previous brief. And the remedy that the government now seeks, the term passing strange has come up in this argument already today. The remedy that the government seeks is a remand so that a new trial can be held with a jury given instructions diametrically opposed to the very instructions that the government requested and obtained in the first trial. Well, they were foreclosed by circuit precedent from doing anything else, weren't they? They were not required to argue in favor of it, Your Honor, and they certainly could have preserved the argument for further review that the approach should be reconsidered. Indeed, the fact that the same arguments that were made by some justices in DiMaia appear just as clearly in Justice Alito's dissent in Johnson v. United States made it clear that those arguments were entirely available if the government sought to preserve them. Instead, they chose not to preserve those arguments and, in fact, to argue directly against them. The sort of precedent. I truly believe that any other argument for, you know, a case specific approach was foreclosed by circuit precedent. And I'm not certain what else they could have done there. Or, you know, the government, what it could have. It's certainly permissible, Your Honor, to insert an argument that we are constrained by current precedent, but in the alternative, we wish to assert this argument for further review. Moreover, there hasn't been the sort of change in the law that could justify a government's reversal in position. In fact, it's not the sort of clear statement from DiMaia. In fact, the government itself says in its statement to this court post-remand that at best what DiMaia does is leave open the question. Leaving open the question is not the sort of change in the law that would justify a reversal of position. Nor is there any prudential reason to reach the question in this case. Mr. Jackson is going to serve a 20-year sentence for the serious crimes of which he was convicted. The only effect of remanding this case for a new trial with jury instructions diametrically opposed to those that the government asserted would be a new trial in which Mr. Jackson might get an additional five years. Clearly, the 924C question is an important one. But this court will have any number of opportunities to consider it in a clean de novo posture, which is the exact opposite of what the Jackson case presents. For those reasons, Your Honor, if there are no questions, I urge the court to reaffirm its prior decision vacating Mr. Jackson's 924C conviction. Thank you. Thank you, Counsel. Good morning, Your Honors, and may it please the court, John Taddy for the United States. Section 16 and Section 924C are not the same statute. Differences in text and context matter. And here, the context is that the Supreme Court has only applied the categorical approach to recidivist statutes, as Judge Robner suggested in her question, like the ACCA and Section 16, as a saving construction to avoid practical and constitutional problems. The Supreme Court has never applied the categorical approach to a statute like Section 924C3b, which by its text requires a determination based on presently charged conduct of whether a defendant used a firearm during and in relation to a crime of violence. The defendants maintain laser focus solely on the text of Section 924C3b. But as the opinions of three courts of appeals, the First Circuit, the Second Circuit, and the Eleventh Circuit indicate, there needs to be a focus also on the text surrounding 924C3b, particularly the operative provision of Section 924C, C1a. And what the language of that provision says is that any person who, during and in relation to a crime of violence, uses or carries a firearm, or who in furtherance of such a crime possesses a firearm, shall be punished. As the Eleventh Circuit, Enbank, and Ovales engaged in a broad discussion of this language indicated, there's no real way to consider that language except to refer to the specific facts of the case that is presented by the government in a jury trial and that is found by the jury. In a 924C case, there's three determinations that have to be made. First, the jury has to define, based on presently charged conduct, whether an individual possessed, used, carried, brandished a firearm. Then the jury has to find that the individual committed a predicate offense. In the Jackson case, that was sex trafficking by force, fraud, or coercion. In Jenkins, it was federal kidnapping. The jury must find that the government's evidence has satisfied the elements of those crimes. Then the next step is the determination of whether that offense is a crime of violence, and that can be done in one of two ways. It could be done by a judge under Section 924C3A, and the reason for that and why that is required as a categorical approach is because of the text of the statute uses the word elements, which the Supreme Court has said in cases like Nijuan is an indication of a categorical approach. But that same approach is not required by the language of 924C3B, particularly when you consider the language of the rest of the statute and the context of a 924C case. It includes words like involves, which indicates a suggestion of fact-specific conduct. It talks about use in the course of committing the offense. If someone were to walk up to you on the street and say, did Mr. Jenkins use force in the course of committing the offense, you'd say, what did he do? You wouldn't ask if all kidnappings require a substantial risk of force or if in the ordinary case, words that don't exist in the statute, by the way, require force. You would ask what he did. So this language is indicative of the fact that the statute is capable of a fact-specific reading. And as long as it is capable. Yes, Your Honor. Forgive me. If, as you claim in your brief, 924C3A and B, 924B, operate in tandem, why would the word offense be interpreted differently in each subsection? That's a good question, Judge Rovner, and it's one that they point to repeatedly in their brief. But they misconstrue what the word offense means. What the word offense means there is it refers to the predicate crime. So it always means the same thing. It means the crime that has been charged in the indictment as the predicate offense. So in Jenkins, it's kidnapping. In Jackson, it's sex trafficking. In other cases, it may be bank robbery or Hobbs Act robbery. And then once the jury has found that that offense has been committed, and by the way, it says offense, that is a felony, so it refers to that crime that has to be found, then the question is whether or not that particular offense or crime, either A, has as an element the attempted use of force, or by its nature involves a substantial risk of physical force. So it's not that the word offense means two different things based on whether or not it falls under A and B. The word offense always means the predicate crime. And it necessarily may mean different things based on the crime itself that's charged as the predicate offense. So our position is that they misconstrue what the word offense means. But in any event, the Supreme Court in Nijuan specifically addressed this type of issue. And this is what Ovais discussed in the NBank opinion, which is that the word offense is capable of multiple constructions. It can mean different things in different contexts. Here it only means one thing. It means the underlying crime that has to be charged in the indictment and has to be proven to the jury beyond a reasonable doubt. And then the inquiry shifts to determine whether or not that crime is a crime of violence in one of two ways, either under the elements clause categorically or under our case-specific construction by a jury, which decides beyond a reasonable doubt whether the crimes, the facts or the acts or the inchoate discussions in a conspiracy perhaps, meet the standard of by their nature involving a substantial risk of force. And this is an inquiry that three courts of appeals thus far, the only three courts of appeals, by the way, to address this fully on the merits, have said this is a straightforward process. The lodestar of our legal system is the jury trial. And the categorical approach was an unnatural way of conducting statutory interpretation that was necessary to some degree based on the nature of prior conduct and the problem of many trials and the practical problems that have come up, the constitutional problems with dealing with recidivist conduct. So it was constructed by the Supreme Court and Taylor in order to avoid constitutional problems in and of itself. It was a form of constitutional avoidance. And what happened was, quite frankly, to be honest. Yes, Your Honor. Sorry. You know, there's a delay and I'm sorry. No, that's fine. And I'll slow down. That's my fault. I apologize. Does the approach you suggest with the jury finding whether the commission of the offense involves a substantial risk of force create a risk of inconsistency in 924C's application? Well, no, Your Honor, because it's necessarily dependent on the underlying facts. The Supreme Court has said in Johnson and in DiMaia that there are many statutes across the criminal code that require an assessment of something like substantial risk. And we've cited a number of different statutes in our briefs. And what the Supreme Court said in Johnson is that a big part of the criminal justice system, whether deciding to go to trial or deciding to plea out, depends on how rightly or wrongly a man estimates things like risk. It's a matter of degree. So what would happen is maybe you have a kidnapping like Mr. Jenkins' kidnapping, which is unambiguously violent. The victim was tied up. He was beaten. He had gasoline poured on him. He had a firework placed in his mouth. He was threatened to execute him twice. He was found badly injured. In a circumstance like that, it would be fairly straightforward for the jury to determine that there was a substantial risk of force. But in a case, for example, like Mr. Jackson's, where it's not as clear that there was a risk of force in the course of committing the offense or that the jury wouldn't necessarily have to find that, which is why we haven't raised a harmless error argument in that case, it's dependent upon the specific facts. So yes, some crimes based on their commission may not count, but that's just a function of the criminal justice system. Some individuals are convicted when they go to trial and some are acquitted. It depends on the strength of the government's evidence that's presented. Now, here's a bottom line question for you. How exactly does DMIA render governing decisions like CARDINA unworkable? So what DMIA says, and if I could take a step back and talk about Johnson, and then I'll get to DMIA. After Johnson, what Johnson said, it did mention the two factors of a statute that can render it vague. It said an ordinary case approach and a substantial risk problem. But Johnson also identified a host of other problems with the ACCA. It talked about the four enumerated offenses and how they contribute to indeterminacy. It didn't limit it to in the course of committing the offense. Lower courts had a huge problem. There were splits everywhere. The Supreme Court had decided something like five cases in ten years. So there were ways after Johnson the government believed it could distinguish Section 16B based on distinguishing those factors. And this court held in Viva Ceja that those factors were not relevant. It really comes down to the two big factors, ordinary case approach and substantial risk. So we defended that before the Supreme Court, that the argument that there were still these differentiating factors. And at the same time in Cardena, this court basically adopted the Viva Ceja opinion by saying 16B and 924C3B are virtually indistinguishable. But the court in Cardena did not grapple with the context of 924C, the differences in the text of the statutes, particularly 924C1A and how that refers to fact-specific conduct. And it didn't really grapple with the doctrine of constitutional avoidance either. So respectfully, the court went out on a little bit of a limb in Cardena. It was right in Viva Ceja with respect to 16B. But as we've argued in these briefs and as three courts of appeals have held, and including courts of appeals that had questioned whether 16B, because of its recidivist applications, could survive, those same reasons don't apply to 924C. 16B and 924C are not the same. And this court wrote in Cross in a footnote in which it forecasted this argument that the court in its prior opinions, like Cardena, in Enoch, in Bush versus Pitzer, have assumed that this statute requires a categorical approach. That's not the correct assumption. The correct assumption, based on the text and the doctrine of constitutional avoidance, is that it is capable of a fact-specific construction. So the government's position is that this court is not bound by its prior decisions in Cardena and Enoch and Bush versus Pitzer. It can reach. Are we bound by Leocal? You're not bound by Leocal. Tell me why. To me, that's a really big problem that you kind of glibly pass over in your brief. I'd be happy to. And the fact of the matter is the Supreme Court's told us twice, don't anticipate. Yes. Overrulings by this court. Yes. It seems to me Leocal's just standing there right in your path. I don't think so, Your Honor. Well, tell me how. Yes, absolutely. Leocal, first of all, was a case about 16b. It did not say anything about 924c3b whatsoever. And it did refer to the language of the statute. But if Leocal so clearly governed not just the resolution of the categorical approach question for 924c, but 16b, why did only four justices of the Supreme Court sign on to a plurality opinion saying that 16b was best read to support a categorical approach? Three justices dissented, including Justice Thomas and Kennedy, who are on the Leocal panel, saying that the statute should be read 16b. This is not even 924c, which is a wholly different statute. But we've been told not to count hits. Very explicitly, don't count hits. But Leocal is not a case about 16b. I'm sorry. Leocal is not a case about 924c. It was about section 16. And the Supreme Court has said different statutory language can be interpreted in different ways based on text and context. So respectfully, I think this court in Cardena, and if it were to make a decision based on Leocal, is getting ahead of the Supreme Court by invalidating a congressional statute that the Supreme Court has never addressed. The only case having to do with 924c that was ever before the Supreme Court was the elements of the offense. And if memory serves, and I apologize if this is not right, it had to do with kidnapping. And it said kidnapping was a crime of violence under 924c. So what would happen then is if the court were to rely on Leocal, it would be getting ahead of Leocal to say that this statute required – it would be getting ahead – it would use Leocal to get ahead of the Supreme Court by saying that Leocal requires a categorical approach for 924c, when this court has never said that. Only 16b is the context that has been provided. So respectfully, our position is that Leocal does not answer the question. Now, there are additional factors, Your Honor, like Leocal did not address constitutional avoidance. It had to do with whether a particular mens rea was required under Section 16 and excluded an offense, DWI, that it said didn't meet the standards of that particular statute. The parties didn't brief a case-specific approach whatsoever. And it was part of sort of this inexorable creep of the categorical approach, starting with Taylor and getting carried over in James to the residual clause of the ACCA, and then it found its way a little bit before that into Leocal. And the government and the courts of appeals and the lower courts have sort of ran with that and said anything that sort of looks like the ACCA and walks like the ACCA should be read in a similar way. But now that these statutes are getting struck down as unconstitutionally vague, both the government and the courts have the obligation to go back and see if there was an alternative statutory construction that can be adopted that saves the statute from unconstitutionality. And as I started off, my argument is pointed out, and as the three courts of appeals that have addressed this issue on the merits have held, 14 circuit judges have said this is a reasonable interpretation of the text. Well, you're getting back to what Judge Ripple just said. We're counting heads. Well, I'd urge the court to go to the opinions, not the heads necessarily, and the reasoning behind them. Well, finally, I think unless the court has any other particular questions, I'd just briefly like to address stare decisis and waiver. As I've said, the government believed that this statute was capable of a construction that was constitutional under the categorical approach. The model jury instructions said that district judges should name the qualifying crime of violence for the jury and make that determination as a matter of law. There were opinions that had assumed a categorical approach was required. So the government did in its briefing in these two cases mention that district courts had noted that a case-specific approach was possible construction. We noted arguments that may be supportive of that, like the contemporaneous nature of the offense. There was never an intentional relinquishment of our arguments. And then when DiMaio came down, we realized that this statute is capable of alternative construction. We're defending the judgments below. The court does not have the obligation to accept the government's concessions, particularly on matters of law. It has rejected those concessions in the past in cases like Curitin, which involved 924C. And ultimately, it has to do with fundamental fairness and what is in the Here we have this case where the issue is teed up. Sotomayor It's not as if a defendant goes unpunished. If his 924C3 conviction is vacated, the conviction for the underlying crime remains intact. And the district court is free to take the use of the firearm, for instance, into account at sentencing, right? It does. And in these cases, the defendants received a substantial sentence. But in every case, that's not going to be the situation. And what a holding saying that either the government has waived this or that 924C3b is unconstitutionally vague would do is it would prevent the government from charging as 924C offenses things like kidnapping, things like violent Hobbs Act robberies, things like violent sex trafficking, arsons. Those are the cases that we have been dealing with in other circuits where courts of appeals, either based on binding precedent or pre-Demiah case law, had said that they don't qualify. And it would preclude the government from being able to charge those cases. And none of the other cases that are up being held pending this case would present a better vehicle. So what we're trying to do is get to the merits of this, try to get to a resolution of the legal question. As a solicitor general, there's a Tenth Circuit, a couple of Tenth Circuit cases on these issues. I'm sorry, Your Honor. Tenth Circuit cases on these very issues before the Supreme Court. Yes. There was. And we have filed petitions for writ of certiorari in the Tenth Circuit case, Salas, and a Fifth Circuit case, Davis. Which have not yet been ruled on. They have not yet been ruled on. I believe that they're conferenced for December. But regardless, there are no petitions before the Supreme Court right now. I believe so, Your Honor. I don't believe that there are any bottom side cert petitions post-Demiah, to my knowledge. But I'd be happy to look into that and follow up with a 28-J if you'd like. Why don't you do that? I would be happy to. Unless Your Honors have any further questions, we'd urge you to affirm the judgments below. Thank you. Thank you, Counsel. I'll give you another minute. Thank you. I appreciate it, Your Honor. My friend on the other side said that the Supreme Court has never applied the categorical approach to a statute that implicates charge conduct. That's wrong for two reasons. First, as I was explaining earlier, 16b is such a statute, insofar as it is incorporated into criminal statutes that apply to charge conduct. It's also wrong because, as we cited on page 20 of our blue brief, the court held in Schmuck v. United States that criminal rule 31, which applies to charge conduct, implicates the categorical approach. I think Your Honors are right that this case comes down to Leocal. In Leocal, the court held that the words offense, by its nature, taken together, compel the categorical approach. Nothing in Demiah calls that into question. In fact, a majority of the court in Demiah concluded, a majority now, not the plurality, said that Johnson tells us how to resolve this case. That decision held that two features of the ACCA render it unconstitutionally vague because the clause had both an ordinary case requirement and an ill-defined risk threshold. It was vague. The majority then says, Section 16b possesses the exact same two features. Justice Gorsuch signed on to that statement. Then in his concurrence, he states that he has presumed that the categorical approach applies, quote, because our precedent, and that's a reference to Leocal, seemingly requires this approach. He then describes Justice Thomas' dissent as urging the court to, quote, reconsider our precedents endorsing the categorical approach. To conclude that anything in Demiah cast doubt on the holding in Leocal that the words offense and by its nature require the categorical approach would be to require this court to engage in exactly the sort of tea leaf reading that the Supreme Court time and again has said courts of appeals must not do. And for that reason alone, on top of all of the other textual reasons that we've laid out in our blue brief, we think this court can and must affirm its original decision in this case. Thank you. Thank you. Mr. Shapiro. Your Honors, the briefs do not cite any case, and nor do I believe there is any case at all that excuses waiver where you've got an affirmative jury instruction, an affirmative argument before the court of appeals, even in a situation where a particular position might be foreclosed by a prior precedent. Parties all the time make arguments to preserve future arguments, and certainly it was clear from Justice Alito's dissent in Johnson that all of those arguments could be made. That's why Demiah called those arguments already on the shelf for the government to take if they wanted to. So would you disagree if I thought that Demiah's analysis and the subsequent remand opened the door to the argument that the government is now making explicitly and could excuse its waiver when you see the evolving law since Johnson? Why is it so unreasonable to excuse the government's waiver? The GVRs don't excuse it for two reasons. The first is that this court has specifically said that you can't read that into a GVR. That's all the more so when one is dealing with a waiver issue. The Supreme Court's not going to look into the waiver issues in the lower courts just for a GVR. Thank you, Your Honors. Thank you, Mr. Shapiro. Thanks to all counsel. The case will be taken under advisement, and the court will be in brief recess.